Whitaker, Judge,
delivered the opinion of the court:
The plaintiff sues for $2,081.54, the purchase price of certain fruits and vegetables sold the defendant during three periods between July 7, 1936 and December 10,1941.
The defendant defends solely on the ground that the plaintiff had submitted false vouchers in connection with former sales of products to it during the period between March 2,1933 and March 30,1935. It claims the right under section 108'6 of the Revised Statutes to offset against plaintiff’s present demand the amount paid on these former vouchers.
The same issue was presented to us in the case of Frank B. Crovo, Jr., et al. v. United States, 100 C. Cls. 368. That case came before us on plaintiff’s demurrer to defendant’s plea of set-off, which was substantially the same plea as that interposed in this case. These pleas allege that in the former vouchers plaintiffs had knowingly “misstated” the particular items sold and the total price of them and that this had “facilitated” certain defalcations of a Captain Radcliffe. On account thereof the defendant insists that this former claim was forfeited to the United States under the above-mentioned section and that it has the right to offset the amount paid thereon against plaintiff’s present claim.
*418 In the Orovo case we held, first, that inasmuch as the plea did not allege that the “misstatements” had been made for the purpose of securing payment of the claim, that the case did not come within the provisions of section 1086 of the Eevised Statutes; and we held, second, since there was no> showing of any pecuniary loss in the former transaction, that the amount paid on the alleged false vouchers could not be set-off against plaintiff’s present claim.
The present case was heard by a commissioner, who has made findings of fact. His final finding is:
The proof fails to show that there was any fraud on the part of plaintiff or any collusion by it in connection with the actions of the contracting officer.
We have carefully examined the testimony; it amply supports this finding.
The proof shows that trucks, ordinarily in charge of a non-commissioned officer, from the Marine Barracks at Quantico, Virginia, came to plaintiff’s place of business in Washington and purchased fruits and vegetables. Sales slips were made out by the plaintiff and signed by the non-commissioned officer in charge. The signed copy was kept by plaintiff and the duplicate was turned over to the non-commissioned officer. Later a voucher was prepared by the commissary officer at the Marine Bai'racks and sent to plaintiff for its signature. Ordinarily these vouchers were presented to plaintiff when the truck came in to make another purchase of fruits and vegetables. Plaintiff checked the amount of the voucher against the amount shown to be due on their ledger. If it was substantially correct, it was signed. If there was a variance of a few cents between the amount shown on the voucher and the amount shown on the ledger it was signed nevertheless, to avoid the red-tape incident to sending it back for correction.
The defendant introduced as exhibit No. 4, “Excerpts from Investigation Report of Norman E. Simpson, Senior Investigator, General Accounting Office, No. A-31231, dated January 23, 1936.” This shows that in 49 of the vouchers there were discrepancies varying from one cent to twenty cents, sometimes an overpayment, and sometimes an under *419 payment. The largest overpayment was one of $5.25, accounted for by the failure to allow a credit for some goods returned. Other discrepancies are accounted for by an underpayment on a previous voucher which was compensated for by an overpayment on a succeeding voucher. For instance, on October 6, 1983, there was an underpayment of $2.25. The following voucher of October 12 showed an overpayment of $2.26. During the period from March 2] 1933 to March 30, 1935, more than two years, during which there were 153 different sales amounting to a total of $6,258.03, there were net overpayments of $5.69, principally accounted for by the failure to take into account the above-mentioned credit.
The testimony wholly fails to convince that there was any intention on the part of plaintiff to practice a fraud on the defendant by exacting from it more money than was due. Slight errors in amounts were made, but they were made by the defendant’s own officer who prepared the voucher, and were mere bagatelles.
The defendant’s chief reliance, however, is not on the fact that more was paid on the vouchers than was due, but rather on the fact that the items listed on the vouchers sometimes were not the items actually sold; but defendant has wholly failed to prove that plaintiff, when it signed the vouchers, knew of these discrepancies. Fendrich, plaintiff’s office and credit manager, who signed many of the vouchers, definitely denies knowledge of them, except in one instance. Defendant’s only testimony that plaintiff knew of these discrepancies at the time the vouchers were signed was the testimony of Investigator Simpson, of the General Accounting Office, who said he had a conversation with some unidentified employee of the plaintiff, who, he says, admitted he knew that the items listed were not correct, but said he did not think it made any difference. Mr. Simpson testified eight years after he made his investigation. He made no record of this conversation and did not include it in his report. Who the employee was, he does not know, but thinks it was Mr. Fendrich, who, as stated above, expressly denies that he had any knowledge of the discrepancies at the time he signed any of the *420 vouchers, except in one instance. Simpson’s testimony is not convincing. /
As the testimony shows, plaintiff was not interested in determining whether or not the exact items sold had been correctly listed, but only in determining whether or not the vouchers called for the correct amount due. Certainly there is no proof that plaintiff’s purpose in signing a voucher which incorrectly listed the items sold was to practice a fraud on the defendant. Defendant has wholly failed to make out a case coming within section 1086 of Revised Statutes and, therefore, it is not entitled to the offset claimed. Its amended counterclaim is dismissed.
Plaintiff has established its demand to the extent of $2,064.54. On the former vouchers plaintiff was overpaid the sum of $5.69, leaving a net amount due of $2,058.85. Judgment therefor will be entered in favor of plaintiff and against the defendant. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.